❏ Original

CLERK'S OFFICE
A TRUE COPY
Dec 08, 2020
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | Case No. |
| *or identify the person by name and address)* ) | |
| the exterior of 7010 North 55th Street, Apartment G, ) | **20-M-469 (SCD)** |
| Milwaukee, Wisconsin ) | |
| ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A3.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____ 12-22-20 _____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.      ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Stephen C. Dries, United States Magistrate Judge _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for  30  days *(not to exceed 30)*      ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____ 12-8-20. 11:45 _____          *Stephen C. Dries*
                                                                                                *Judge's signature*

City and state:  Milwaukee, Wisconsin _____          Stephen C. Dries, United States Magistrate Judge
                                                                                        *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

**CLERK'S OFFICE**
A TRUE COPY
Dec 08, 2020
s/ JeremyHeacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) |
| the exterior of 7010 North 55th Street, Apartment G, Milwaukee, Wisconsin | |

Case No.

**20-M-469 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A3.

located in the _____ Eastern _____ District of _____ Wisconsin _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841, 843(b), and 846 | Conspiracy to distribute a controlled substance, distribution of a controlled substance, and possession with intent to distribute a controlled substance |

The application is based on these facts:

See attached affidavit.

- ☐ Continued on the attached sheet.
- ☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SCOTT MARLOW  Digitally signed by SCOTT MARLOW
Date: 2020.12.08 11:26:35 -06'00'

*Applicant's signature*

Special Agent Scott Marlow, DEA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 12/08/2020 _____

*Judge's signature*

City and state:  Milwaukee, Wisconsin

Stephen C. Dries, United States Magistrate Judge

*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF**</u>
<u>**AN APPLICATION FOR SEARCH WARRANTS**</u>

I, Scott Marlow, being first duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1.      I make this affidavit in support of applications under Rule 41 of the Federal Rules of Criminal Procedure for warrants to deploy a drug detection canine at the following premises, further described in Attachments A1, A2, and A3, for the evidence described in Attachment B:

> A1. The exterior of Unit 526 of the CubeSmart Self Storage, located at 5115 West Good Hope Road, Milwaukee, Wisconsin, a secure self-storage facility with eight separate storage buildings. Unit 526 is in the fourth storage building facing north with the numerals "526" above the storage door and is secured by a pad lock.

> A2. The exterior of Unit 549 of the CubeSmart Self Storage, located at 5115 West Good Hope Road, Milwaukee, Wisconsin, a secure self-storage facility with eight separate storage buildings. Unit 549 is in the fourth storage building facing south with the numerals "549" above the storage door and secured by a pad lock.

> A3. The exterior of 7010 North 55th Street, Apartment G, Milwaukee, Wisconsin, an apartment located within the Presidio Square Apartments complex.

2.      I am a Special Agent with the Drug Enforcement Administration (DEA), and have been so employed since March 2006. Prior to my current assignment, I was employed as a police officer with the West Allis Police Department for approximately nine years. I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of, and to make arrests for federal offenses.

3.      I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws, firearms laws, and money laundering laws, including Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, and Title 18,

1

United States Code, Sections 922, 924, 1956, and 1957, and other related offenses. More specifically, my training and experience includes the following:

a. I have utilized informants to investigate drug trafficking. Through interviews of informants and drug traffickers, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b. I have also relied upon informants to obtain controlled substances from drug traffickers, and I have participated in undercover purchases of controlled substances from drug traffickers;

c. I have extensive experience conducting street surveillance of individuals engaged in drug trafficking;

d. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, drug proceeds, and drug trafficking records were seized;

e. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base, also known as crack cocaine, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

f. I am familiar with the language used over the telephone to discuss drug trafficking and know that the language is often limited, guarded, and coded.

g. I know that drug traffickers often use electronic equipment and wireless and landline telephones to conduct drug trafficking operations. I also know that drug traffickers often change their phone numbers and cellular devices on a frequent basis to thwart law enforcement from tracking their phones and to conceal their identities. I know that drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate drug trafficking;

h. I know that drug traffickers commonly have in their possession, at their residences, and at other locations where they exercise dominion and control drugs, drug proceeds, firearms, ammunition, and records or receipts pertaining to such;

i. I have been assigned to court-authorized wiretaps and have been trained to operate the equipment used to conduct such operations;

j. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase or title these assets in order to avoid scrutiny from law enforcement;

k.  I know that drug traffickers must keep on-hand, large amounts of U.S. currency to maintain and finance their ongoing drug business. I know it is common for drug traffickers to secrete contraband, drug proceeds, and records of drug transactions in secure locations within their residences, their businesses, or other locations over which they maintain dominion and control.  These secure locations include, but are not limited to safes, briefcases, purses, filing cabinets, and hidden storage areas in natural voids of a residence;

l.  I know it is common for persons involved in drug trafficking to maintain evidence about obtaining, secreting, transferring, concealing, or spending drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, and money wrappers. These items are maintained by the traffickers within residences (including attached and unattached garages), businesses, or other locations over which they maintain dominion and control;

m.  I know drug traffickers commonly maintain addresses or telephone numbers in books, papers, or in electronic devices, which reflect names, addresses, or telephone numbers of their associates in the drug trade; and

n.  I know drug traffickers take or cause to be taken photographs of themselves, their associates, their property, and their drugs. These traffickers usually maintain these photographs in their possession, often in electronic devices.

4.  I have participated in numerous firearms trafficking and drug trafficking investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. This has led to evidence of the crimes under investigation and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of suspects and conspirators.

5.  I know that a "drug detection canine" is trained to detect the odor of controlled substances, including marijuana, cocaine, heroin, fentanyl, and other dangerous drugs with chemical processing similarities. I know that upon the detection of the odor of these controlled substances, the dog's behavior will change and that the dog is trained to come to a final response

called an "alert." This "alert" may also indicate items recently contaminated with, or associated with, the odor of one or more of the controlled substances.

6.     I know when a dog is trained to detect a substance, it learns to discriminate the odor vapor of that substance from other odors in the environment by reacting to the compounds that best help it earn reinforcement from the drug detection canine handler. With sufficient training, the compounds whose detection most often results in reinforcement becomes the "odor detection signature."

7.     This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

8.     Because this affidavit is submitted for the limited purpose of securing search warrants, I have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause.

9.     There is probable cause to believe that evidence of violations of Title 21, United States Code, Sections 841, 843(b), and 846, including the things described in Attachment B, will be found in the locations listed in Attachments A.

## **PROBABLE CAUSE**

10.     I am participating in an investigation centered on the distribution of heroin by Vance Fields (DOB: XX/XX/1984), also known as "Vito." In June 2019, case agents met with a source of information (herein referred to as SOI #1), who wished to provide information related to the

4

drug trafficking and other illegal activities of several Milwaukee-area narcotics traffickers, one of whom SOI #1 knew as "Vito."

11.     SOI #1 described "Vito" as a black male with dark skin, a low fade haircut, approximately 35 to 40 years old, and approximately 5'6" to 5'8" tall with a muscular build. SOI #1 further indicated that he/she believed "Vito" was incarcerated at some point during 2017. SOI #1 indicated he/she had known "Vito" for "years" and knew "Vito" sold cocaine and heroin. SOI #1 further indicated that he/she had begun buying heroin from "Vito" within the past year, which referred to late 2018 to 2019.

12.     During the meeting with case agents, SOI #1 indicated he/she did not currently have a telephone number for "Vito," but did provide information about the Facebook page for "Vito" under the name "Vance Fields." SOI #1 displayed a photograph from the "Vance Fields" Facebook page to case agents, and SOI #1 confirmed the photo was the person SOI #1 knew as "Vito."

13.     SOI #1 indicated that he/she had heard that SOI #1's friend "Melvin Rattler" had been killed by FIELDS, prior to Rattler obtaining approximately $18,000 worth of narcotics. SOI #1 indicated FIELDS believed Rattler may have burglarized one of FIELDS's stash houses in Milwaukee, and FIELDS lost a kilogram of cocaine, approximately 300 grams of heroin, and $20,000 in U.S. currency. SOI #1 stated that he/she heard that FIELDS's vehicle had been observed by witnesses in the area immediately before and after Rattler's homicide, but that FIELDS said he was out of the state at the time. SOI #1 stated he/she began purchasing heroin from FIELDS around September 2018. SOI #1 indicated each time he/she purchased heroin from FIELDS, he/she purchased 100 grams of heroin for $65 per gram.

## SOO #2[1]

14.     In February 2020, case agents spoke with another source of information about the drug trafficking activities of FIELDS (herein referred to as SOI #2). SOI #2 told case agents that he/she knew a subject with the nickname "Vito" for more than 8 years and that "Vito" was distributing kilogram quantities of cocaine during that entire time. Recently, SOI #2 discovered that "Vito" had begun distributing heroin in the past two to three months. SOI #2 viewed an official photograph of Vance FIELDS and indicated FIELDS was the same person, who SOI #2 knew as "Vito."

15.     SOI #2 indicated that he/she began purchasing heroin from FIELDS in December 2019 on the south side of Milwaukee. FIELDS "fronted" SOI #2 30 grams of heroin. I know that "fronting" refers to selling narcotics on consignment. SOI #2 described the heroin as white in color. FIELDS charged SOI #2 $60 per gram, and SOI #2 was expected to pay approximately $1,800 to FIELDS at the time of their next transaction.

16.     Approximately one and a half weeks later, SOI #2 met FIELDS again and was fronted another 30 grams. At the end of January 2020, FIELDS was fronting 50 to 100 grams of heroin to SOI #2. SOI #2 described the heroin as varying from white to tan.

---

[1] For several reasons, case agents believe SOI #2's information is reliable and credible. Substantial parts of SOI #2's information have been independently corroborated and verified by law enforcement. SOI #2's information concerning the FIELDS DTO has been corroborated by other confidential sources, information obtained from various public databases, physical surveillance, electronic surveillance, and through controlled drug purchases. Additionally, SOI #2 has made statements against his/her penal interest related to his/her direct involvement in illegal activity, including narcotics trafficking in the Milwaukee area. SOI #2 has a pending arrest in Milwaukee County for a narcotics trafficking offense and was providing information in this investigation for consideration and was not receiving payment for his/her cooperation. SOI #2 is also under federal supervision and was cooperating for potential consideration in any revocation sentence. In summer 2020, SOI #2 tested positive for marijuana. SOI #2 is now the suspect in an assault and discharge of a firearm, which occurred in September 2020. SOI #2 has at least four prior felony convictions for narcotics trafficking, escape, and human trafficking offenses, along with multiple prior arrests that were referred to juvenile authorities. (This disclosure statement was previously corrected to reflect that SOI #2 has one open arrest, which is pending, not charged, that SOI #2 is on federal supervision, and that SOI #2 has four felony convictions rather than three felony convictions and one misdemeanor conviction.) SOI #2 is no longer cooperating with case agents. Nevertheless, case agents believe that SOI #2's information in this investigation remains reliable and credible.

6

17.     SOI #2 provided case agents the phone number (920) 809-5701 for FIELDS and stated that FIELDS had the phone number for approximately one month. SOI #2 indicated that FIELDS often changes phone numbers and provided case agents the most recent prior phone number for FIELDS as (262) 393-9362 and the second most recent number as (920) 407-9110. SOI #2 stated that when FIELDS changed his phone number, FIELDS would contact SOI #2 and provide the new number.

18.     SOI #2 stated he/she most recently spoke with FIELDS about 10 days prior to meeting with case agents, when SOI #2 obtained heroin from FIELDS. SOI #2 stated he/she met with FIELDS "in traffic," meaning in a vehicle, and obtained a significant amount of heroin from FIELDS. SOI #2 indicated he/she currently owed FIELDS approximately $3,000. SOI #2 stated that FIELDS drove a dark blue or black Dodge Caravan during the narcotics transaction.

19.     SOI #2 indicated that in September 2019 SOI #2 entered the black Dodge Caravan to obtain 100 grams of heroin from FIELDS. SOI #2 stated that he/she was seated in the front passenger seat of the black Dodge Caravan, and he/she observed FIELDS manipulate some "switches" or "buttons" to the area left of the steering wheel. Afterward, FIELDS pushed on an area in the dashboard of the black Dodge Caravan near the radio. SOI #2 said FIELDS then removed a large "drawer" from within the dashboard area. SOI #2 described the dashboard area of the black Dodge Caravan as "normal" prior to FIELDS removing the "drawer." SOI #2 stated that FIELDS removed the 100 grams of heroin from that area and observed numerous other clear, plastic bags, which SOI #2 also believed contained heroin. SOI #2 stated that he/she saw larger bags of heroin than the one he/she was purchasing and estimated the overall amount of heroin contained in the hidden compartment within the black Dodge Caravan was greater than two kilograms.

20.     Case agents asked SOI #2 if he/she knew of any residences frequented or occupied by FIELDS, and SOI #2 provided specific directions and a description of a residence located at 9241 West Allyn Street, Apartment K, Milwaukee, Wisconsin. (Case agents had previously identified this residence as a location utilized by other members of the FIELDS DTO during surveillance operations.) Case agents know that Vance FIELDS's brother Vincent Fields listed a residence of 9241 West Allyn Street, Apartment K, Milwaukee, Wisconsin with the Wisconsin Department of Transportation.

21.     Between March 2020 and the present, case agents have obtained several federal search warrants for historical and prospective location information for FIELDS's cell phone(s) with multiple assigned call numbers.

22.     That location information revealed previously unknown locations, subjects, and vehicles, which case agents believe FIELDS is using to further his drug trafficking activities. That location information allowed case agents to observe FIELDS's activities and patterns, so that case agents could better understand FIELDS's drug trafficking operations and network.

23.     For example, case agents were conducting surveillance of FIELDS on March 12, 2020, while using the location information from the phone. Case agents went to the area of 6021 North 42nd Street, Milwaukee, Wisconsin and observed FIELDS exit a residence, previously unknown to case agents, carrying a black duffle bag. FIELDS placed this duffle bag in the black Dodge Caravan, which case agents had previously observed FIELDS operating. Case agents followed FIELDS to 6461 North 54th Street, and case agents observed FIELDS remove the black duffle bag from the black Dodge Caravan and place the black duffle bag in the far back corner of the garage. The black Dodge Caravan displayed Wisconsin license plate AGZ-9793, which was registered to Sasha WILLIAMS of 4251 North 47th Street, Milwaukee, Wisconsin. FIELDS exited

the garage empty handed. FIELDS then entered the residence at 6461 North 54th Street and exited a short time later with a black suitcase. FIELDS then placed the black suitcase in a Ford Explorer, which had arrived at the residence, and the Ford Explorer then immediately left. Based on training and experience, case agents believe that FIELDS may be storing drugs or drug proceeds at 6021 North 42nd Street.

24.     On March 17, 2020, case agents reviewed the phone's location information and observed the phone was in the area of 2957 North Sherman Boulevard, Milwaukee, Wisconsin. Case agents conducted surveillance in that area and observed a black male, who matched the physical description of FIELDS. This subject was wearing a surgical facemask, so case agents were unable to make a positive identification of the driver. This subject was driving a rental vehicle. Case agents served an administrative subpoena on the rental car company, and the records from that rental car company indicate that the subject had an open rental agreement with a resident of 2957 North Sherman Boulevard. Case agents believe that FIELDS may be using nominees to rent vehicles, so that FIELDS can conceal his drug trafficking from law enforcement.

25.     Case agents later reviewed the phone's location information from March 16, 2020 and learned that the phone traveled from Milwaukee to Chicago and then remained in Chicago for approximately 45 minutes before driving back to Milwaukee. Based on information provided by SOI #2, case agents believe that FIELDS obtained large, wholesale quantities of cocaine from a supplier in the Chicago area, possibly using a rental car in a nominee's name.

26.     On March 19, 2020, case agents reviewed FIELDS's location information, which revealed that he traveled from Milwaukee to Minneapolis, Minnesota on March 18, 2020, arriving at about 4:57 p.m., but only remained in Minneapolis for approximately 90 minutes before returning to Milwaukee. The location information indicated that FIELDS traveled to Chicago on

March 19, 2020. That information suggests that FIELDS's cell phone arrived to the vicinity of 5737 South Michigan Avenue, Chicago, Illinois at approximately 1:50 a.m. and then traveled northbound towards Milwaukee at approximately 2:21 a.m. FIELDS's cell phone was in the vicinity of 5003 North 55th Street, Milwaukee, Wisconsin at 3:48 a.m. Case agents conducted surveillance of that residence and observed the same rental vehicle parked in the yard of 5003 North 55th Street.

27. Case agents requested utility information for the residence 5003 North 55th Street and learned the subscriber of the utility account was Tashiki RODGERS. RODGERS held the account at that residence since August 2017. The phone number listed on the utility account for RODGERS was 414-526-6232. A review of FIELDS's telephone toll records reflected that RODGERS's phone number was in contact with FIELDS's cell phone numbers between February 11, 2020 and May 7, 2020 with a total of 1,232 voice/text contacts, between May 7, 2020 and July 14, 2020 with a total of 1,618 voice/text contacts, and between July 2, 2020 and November 16, 2020 with a total of 2,923 voice/text contacts.

28. On March 24, 2020, case agents conducted a controlled buy of heroin from FIELDS with SOI #2. During that controlled buy, case agents monitored the location information of FIELDS's cell phone while conducting in-person surveillance. Case agents observed FIELDS at the residence located at 6461 North 54th Street, Milwaukee, Wisconsin just before the controlled buy, and FIELDS's cell phone was located in the immediate vicinity of 6461 North 54th Street. Case agents observed FIELDS arrive at the controlled buy location and meet with SOI #2, while FIELDS's cell phone was also located in the immediate vicinity of the controlled buy location.

29. On April 2, 2020, case agents conducted surveillance of FIELDS around 8:22 p.m. The location information placed FIELDS's cell phone in the immediate vicinity of 4269 North 71st

Street. While conducting surveillance, case agents observed a red Dodge Journey displaying Florida license plate IYT-W78 parked in the 7100 block of West Marion Street. That vehicle is registered to the Avis Budget Group in the Florida Department of Transportation's database. Case agents served an administrative subpoena on the Avis Budget Group, which revealed that the vehicle was rented by FIELDS. On the rental agreement, FIELDS provided an address of 10413 West Kiehnau Avenue, Milwaukee, Wisconsin and a phone number of 414-514-7158. Case agents know that telephone number is associated with Sasha R. Williams.

30.     During the first monitoring period, case agents identified seven times when FIELDS's cell phone was in Chicago or Minneapolis. Based on training and experience, case agents believe that these trips are related to FIELDS's drug trafficking operation, because Chicago and Minneapolis are source cities for narcotics and the short stays at the destination relative to the travel time.

31.     On April 21, 2020, case agents conducted a controlled buy of heroin from FIELDS with SOI #2. Investigators surveilled the residence at 4269 North 71st Street, Milwaukee, Wisconsin at 2:20 p.m. The location information placed FIELDS's cell phone in the immediate vicinity of 4269 North 71st Street at 2:25 p.m. Investigators observed a white Mitsubishi Outlander displaying Virginia license plate USV5563 parked just west of the intersection at North 71st Street and West Marion Street. That vehicle is registered to the Avis Budget Group as a rental vehicle in the Virginia Department of Transportation's database.

32.     On or about April 27, 2020, FIELDS contacted SOI #2 and invited him/her to meet with FIELDS at the residence of another person located at 7723 West Sheridan Avenue, Apartment C, Milwaukee, Wisconsin. When SOI #2 arrived at that location, SOI #2 observed FIELDS count out $100,000 in U.S. currency from one of two grocery-style bags on the kitchen table. The second

11

bag contained additional U.S. currency, also believed to be approximately $100,000. FIELDS informed SOI #2 and the other person that he was traveling to Minnesota to "get good." Case agents believe that FIELDS was indicating that he was traveling to Minneapolis, Minnesota to obtain narcotics.

33.    During the monitoring period from May 28, 2020 to June 27, 2020, case agents monitored the location FIELDS's cell phone, which showed him regularly traveling to and from the CubeSmart Self Storage, located at 5115 West Good Hope Road, Milwaukee, Wisconsin. Between May 29, 2020 and June 25, 2020, the phone was in the vicinity of that CubeSmart location at least 17 times.

34.    Through an administrative subpoena, case agents received a "rent roll" listing customers renting storage units at CubeSmart Self Storage. A review of that "rent roll" revealed that Sasha Williams, a known associate of FIELDS, rented two different storage units at that facility.

35.    On June 22, 2020 at approximately 7:15 a.m., case agents conducted surveillance using the location information for FIELDS's cell phone. At that time, the phone was in the immediate vicinity of the residence located at 5003 North 55th Street, Milwaukee, Wisconsin. Case agents had previously observed FIELDS at this location during prior monitoring periods. During that surveillance, case agents observed a green Dodge Caravan backed up to the detached garage of the residence. A Wisconsin license plate was in the front dashboard of the vehicle, but unreadable from the street.

36.    Later on June 22, 2020 at about 3:30 p.m., case agents conducted surveillance. That location information showed that FIELDS's cell phone was in the immediate vicinity of 2955-2957 North Sherman Boulevard, Milwaukee, Wisconsin at about 3:37 p.m. Case agents observed

the same green Dodge Caravan parked on North Sherman Boulevard in front of that residence. The license plate displayed on the rear of the vehicle was Wisconsin license plate MX-4117.

37. A check of the Wisconsin Department of Transportation records revealed that the vehicle was registered to "To & From Transportation Services" with an address of 4251 North 47th Street, Milwaukee, Wisconsin. Case agents know that address was one of Sasha WILLIAMS's prior residences. A further check of "To & From Transportation Services" revealed that the business is registered in the name of Sasha WILLIAMS.

38. On June 29, 2020, case agents monitored the location of FIELDS's cell phone and noticed that the phone was traveling southbound from the Milwaukee area. Based on the path of travel, case agents believe that FIELDS likely traveled to meet his source of supply in Chicago. Case agents notified agents in Chicago, who conducted surveillance of FIELDS. At 11:43 a.m., a case agent observed FIELDS exit the apartment building at 5741 South Michigan Avenue, Chicago, Illinois. FIELDS was carrying a red plastic bag, which contained two shoeboxes, and was wearing a backpack. The case agent observed FIELDS enter the driver door of a black Dodge Journey and depart the area. A check of the Wisconsin Department of Transportation's records revealed that the vehicle was a 2018 Dodge Journey registered to Sasha R. Williams.

39. On August 13, 2020, case agents noted that FIELDS's cell phone was traveling from Milwaukee, Wisconsin to San Francisco, California on a commercial airline. On August 16, 2020, investigators observed that FIELDS's cell phone was returning to Milwaukee, Wisconsin using ground transportation.

40. On August 17, 2020, investigators coordinated with the Nebraska State Patrol to locate FIELDS as he traveled through Nebraska. That day, Trooper Ryan Hayes of the Nebraska State Patrol observed a black Chrysler 300 displaying California license plate 8LUW769. Trooper

13

Hayes observed that the passenger of the vehicle matched the description of FIELDS. Trooper Hayes stopped the vehicle for an equipment violation and made contact with the driver Nicole GOINS and the passenger FIELDS.

41.     As a result of their investigation, troopers deployed a drug detection canine, which indicated the presence of narcotics on the vehicle. The troopers searched the vehicle and seized approximately five pounds of marijuana in five separate vacuum-sealed bags. Four bags were in a blue suitcase along with men's clothing. One bag was in a suitcase with women's clothing.

42.     Both FIELDS and GOINS were arrested for possession of marijuana with intent to distribute, possession of more than one pound of marijuana, and no drug tax stamp in violation of Nebraska law. During that traffic stop, search, and arrest, the troopers found three cellular devices—one of the devices was on Goins's person and two of the devices were found in the vehicle. One of the devices was consistent with the make, model, and identifying information of the device listed in the subscriber information obtained pursuant to the search warrants discussed above. FIELDS and GOINS were processed and later released after posting cash bond.

### **SOI#3**[2]

43.     In early August 2020, agents of the Wisconsin Department of Justice's Division of Criminal Investigation debriefed another source of information (SOI #3), who identified a male subject, Robert Bean, who acts as a middleman for multiple drug dealers in greater Milwaukee.

---

[2] For several reasons, case agents believe SOI #3 is reliable and credible. Substantial parts of SOI #3's information have been independently corroborated and verified by law enforcement. SOI #3's information concerning the FIELDS DTO has been corroborated by other sources of information, information obtained from various public databases, physical surveillance, and through a controlled drug purchase. Additionally, SOI #3 has made statements against his/her penal interest related to his/her direct involvement in illegal activity, including narcotics distribution in the Milwaukee area. SOI #3 has a pending arrest in Milwaukee County for a narcotics possession offense and is providing information in this investigation for judicial consideration and is not receiving payment for his/her cooperation. SOI #3 has a criminal history for larceny and traffic offenses.

SOI #3 first met Bean in the summer of 2019. SOI #3 stated Bean had shown SOI #3 large quantities of heroin and cocaine, and SOI #3 had made purchases of heroin from Bean. SOI #3 learned that Bean obtained quantities of heroin from an individual named "Vito." During the transactions, SOI #3 said Bean would drive with SOI #3 to meet with "Vito," usually in the area of Mill Road in northwest Milwaukee.

44.     During the week of October 5, 2020, an undercover officer and SOI #3 conducted a controlled purchase of approximately 50 grams of heroin in Milwaukee from Bean, under the supervision of case agents. Prior to the transaction, SOI #3 placed a call to Bean to order the heroin. Bean said he would obtain the heroin from "V," referring to "Vito," later identified as FIELDS.

45.     The undercover and SOI #3 departed the neutral location and picked up Bean at a residence on North 12th Street and West Wright Street in Milwaukee. While in transit, Bean directed the undercover and SOI #3 to the area of North 51st and West Villard Avenue. Moments after the undercover, SOI#3, and Bean arrived, case agents observed a grey Dodge Caravan pull up and stop on West Villard near North 51st Street. Additional surveillance agents positively identified FIELDS as the driver and sole occupant of the grey Dodge Caravan. The undercover handed Bean $3,000 in pre-recorded buy money. Bean then exited the undercover vehicle and approached the gray Dodge Caravan, entering the front passenger seat. Minutes later, Bean exited the grey Dodge Caravan, and returned to the undercover vehicle, which departed the area. At this time, Bean handed SOI #3 a clear bag containing a tan chunky substance. SOI #3 immediately handed the bag and its contents to the undercover.

46.     Additional case agents followed the grey Dodge Caravan from the area, as FIELDS traveled to North 55th Street and parked just south of West Fairmount Avenue. FIELDS exited the Dodge Caravan, and entered the side door to 5003 North 55th Street, Milwaukee, Wisconsin. Case

agents later conducted a field test of the tan chunky substance weighing approximately 50.31 grams, which tested positive for the presence of heroin.

47.     Case agents learned the Dodge Caravan was a rental vehicle from EAN Holdings, the holding company for Enterprise. Case agents sent an administrative subpoena to EAN Holdings, requesting the current renter of the vehicle. The response listed Nicole Goins (DOB: 10/04/1978) with an address of 2957 North Sherman Boulevard, Milwaukee, Wisconsin and a telephone number 414-758-3631, as the current renter of the Dodge Caravan.

48.     On October 9, 2020 the Honorable Nancy Joseph signed a warrant authorizing case agents to obtain location information for Fields's cell phone.

49.     On October 13, 2020, the Honorable Nancy Joseph authorized a tracking warrant for the Dodge Caravan used by Fields. On October 15, 2020, case agents successfully installed the tracking device on the Dodge Caravan.

50.     On October 16, 2020, case agents monitored the tracking device on the Dodge Caravan, which showed it traveling from Milwaukee, Wisconsin to Chicago, Illinois. Case agents coordinated with agents in Chicago, who established surveillance in the immediate area of 5741 South Michigan Avenue, Unit 1, Chicago, Illinois—the residence of Charles McMILLAN, FIELDS's suspected source of heroin. At approximately 12:04 p.m., case agents observed FIELDS arrive in the area in the Dodge Caravan. FIELDS exited the vehicle carrying an empty plastic grocery bag, and entered 5741 South Michigan Avenue, after momentarily waiting at the front entrance. At approximately 12:38 p.m., case agents observed FIELDS exit the residence carrying a grocery bag, which appeared to contain an item the size and shape of a book. Case agents believe FIELDS obtained approximately one kilogram of heroin from McMILLAN while inside. FIELDS later returned to the Milwaukee area in the Dodge Caravan.

51.     On October 19, 2020, case agents monitored the tracking device on the Dodge Caravan. At approximately 6:33 a.m., the vehicle was located at 7010 North 55th Street, Apartment G, Milwaukee, Wisconsin.   At 9:53 a.m., electronic surveillance showed the vehicle travel to CubeSmart Self Storage, located at 5515 West Good Hope Road, Milwaukee, Wisconsin. Investigators previously learned that two girlfriends of FIELDS—Sasha WILLIAMS and Tashiki RODGERS—are currently renting storage units at the facility.

52.     As described above, investigators have determined that WILLIAMS is an integral part of the FIELDS's drug trafficking operation, in that FIELDS uses several vehicles registered to WILLIAMS to distribute controlled substances. Tashiki RODGERS is also an integral part of the FIELDS's drug trafficking operation, in that one of the places that he appears to stash drugs or drug proceeds is currently occupied by RODGERS. Sasha WILLIAMS is currently renting Unit 549, and Tashiki RODGERS is currently renting Unit 526, at the CubeSmart. At approximately 9:40 a.m., the grey Dodge Caravan appeared in front of Unit 526 for a short period of time.  After leaving the storage facility, investigators monitored the tracking device as it traveled to 7010 North 55th Street, Apartment G, Milwaukee, Wisconsin.   Electronic surveillance of the grey Dodge Caravan showed the vehicle travel south of Milwaukee towards Chicago. At approximately 4:46 p.m., electronic monitoring indicated that the grey Dodge Caravan arrived at 5741 South Michigan Avenue, Unit 1, Chicago, Illinois, the residence of FIELD's source of supply, Charles McMILLAN. At approximately 5:05 p.m., electronic surveillance indicated that the grey Dodge van left McMILLAN's residence, and then drove to the area of Lansing, Illinois, and then eventually returned to the Milwaukee area.

53.     On October 20, 2020, an undercover officer conducted a controlled purchase of approximately 50 grams of heroin in Milwaukee from Robert BEAN, a middleman for multiple

drug dealers in the greater Milwaukee area. SOI #3 had learned that BEAN obtained quantities of heroin from FIELDS in the area of North Mill Road in northwest Milwaukee. (On October 6, 2020, the undercover officer and SOI #3 conducted a controlled purchase from BEAN. After the controlled purchase, the undercover officer was allowed to make direct contact with BEAN.)

54.     The undercover officer made contact with BEAN, and BEAN directed the undercover officer to the area of North 60th Street and West Villard Avenue in Milwaukee. Upon arrival, the undercover officer made contact with BEAN. BEAN directed the undercover officer to enter BEAN's vehicle, which was determined to be a silver Chevrolet SUV. Surveillance units observed the undercover enter the vehicle and sit in the rear passenger seat of the vehicle. The undercover officer gave the middleman $3,000 in pre-recorded buy money.

55.     At this same time, additional investigators monitored the tracking device on the Dodge Caravan, which had arrived in the area of 5003 North 55th Street, Milwaukee, Wisconsin. A case agent observed FIELDS park his vehicle across from the residence of 5003 North 55th Street.

56.     At 11:56 a.m., a case agent observed FIELDS exit 5003 North 55th Street, enter the driver seat of a 2019 Dodge Caravan, and leave. Surveillance units observed FIELDS drive northbound on North 55th Street and then westbound on West Villard Avenue, before entering the same parking lot where BEAN and the undercover were sitting in BEAN's vehicle. At 11:58 a.m., another case agent observed BEAN exit the front passenger door of the silver Chevrolet vehicle and walk to the passenger side of FIELDS's 2019 Dodge Caravan. BEAN entered the passenger-side of the vehicle, exited shortly after, and began walking across the parking lot back toward the silver Chevrolet occupied by the undercover officer. BEAN provided the undercover officer a

plastic bag that contained a tan chunky substance, suspected to be heroin. Case agents conducted a preliminary test of the substance which returned a positive result for heroin.

57.     Case agents conducted post-buy surveillance of FIELDS, who appeared to conduct a hand-to-hand transaction with an unknown black male in the area of 3931-3933 North Sherman Boulevard, Milwaukee, Wisconsin.  Approximately an hour later, the tracking device showed the Dodge Caravan in the rear alleyway behind 2957 North Sherman Boulevard, a residence associated with Nicole Goins. The tracking device then showed the Dodge Caravan travel to General Mitchell International Airport, at the rental vehicle return lot. Case agents later removed the tracking device from the Dodge Caravan, and contacted Enterprise Rent-A-Car, who advised Goins had returned the Caravan, and rented a grey Chrysler Pacifica, bearing Wisconsin license plate AGB-4479.

58.     The premises located at 7010 North 55th Street, Apartment G, Milwaukee, Wisconsin is an apartment located within the Presidio Square Apartments complex. Case agents noticed that FIELDS began to frequent this area at the end of October 2020, based on electronic location information obtained from FIELDS's cell phone.

59.     On October 29, 2020, case agents conducted surveillance in the area of 7010 North 55th Street. At approximately 8:25 a.m., case agents observed a grey Chrysler Pacifica—the same one rented by Nicole Goins—parked on West Hustis Street, just east of North 55th Street. The vehicle displayed Wisconsin license plate AGB-4479. At approximately 8:56 a.m., case agents observed FIELDS walking toward the Chrysler Pacifica, get into the driver's seat, and leave.

60.     On November 4, 2020, a case agent conducted surveillance at 7010 North 55th Street because the electronic location information for FIELDS's cell phone was in the vicinity of that residence. The case agent arrived in the area around 7:00 a.m. and observed a white Kia parked on West Hustis Street just east of North 55th Street. At 7:38 a.m., the case agent observed the

southwestern most apartment door open. The case agent recognized the black male subject, who exited the apartment, as FIELDS. The case agent observed FIELDS lock the apartment door with a key, then walked to the driver door of the white Kia SUV, entered the vehicle on the driver;s side, and departed the area in the vehicle.

61.     Case agents obtained a rent roll for the apartment complex and learned the occupant of 7010 North 55th Street, Apartment G was Geneva NELSON. A check of the utility subscriber indicated NELSON was the utility subscriber of the apartment and had been since October 6, 2020. Telephone toll records show frequent contact between FIELDS and NELSON as of October 2020.

62.     On November 6, 2020, case agents conducted an undercover purchase of heroin from FIELDS through BEAN. The undercover officer contacted BEAN around 11:50 a.m., and BEAN directed the undercover officer to meet him in the "area where they met before." Case agents know that was in the area of North 60th Street and West Villard Avenue.

63.     The undercover officer was provided $7,500 in pre-recorded buy funds and departed the offices of the North Central HIDTA. Case agents followed the undercover officer as he drove to the location he was directed to by BEAN. Around the same time, a case agent observed FIELDS arrive at 5003 North 55th Street, open the door with a key, and then enter. Case agents reviewed the electronic location information for FIELDS's cell phone and observed the phone was in the vicinity of 5003 North 55th Street.

64.     A case agent observed FIELDS leave 5003 North 55th Street, enter a green Dodge Caravan, and drive southbound toward West Hampton Avenue. FIELDS drove out of the case agent's view.

65.     While driving to the buy location, the undercover officer was contacted by BEAN and told to meet at the corner of North 51st Boulevard and West Villard Avenue. Around 12:09

p.m., a case agent observed FIELDS's vehicle parked in the parking lot of Villard Food and Liquor, located at 5123 West Villard Avenue. Case agents reviewed the location information of FIELDS's cell phone and observed the phone was in the vicinity of the store.

66.     The undercover officer arrived in the area of 5123 West Villard Avenue and observed BEAN in the parking lot of the business. Surveillance units observed BEAN enter the undercover vehicle briefly and exit carrying a small paper bag, in which the undercover officer had placed the pre-recorded buy money. BEAN entered the front passenger seat of FIELDS's green Dodge Caravan, and the undercover officer believed he observed BEAN and FIELDS counting the pre-recorded buy money. A short time later, BEAN exited FIELDS's vehicle and approached the undercover vehicle carrying the same small paper bag. BEAN handed the bag to the undercover officer.

67.     FIELDS and the undercover officer departed the parking lot simultaneously at approximately 12:30 p.m. A case agent observed FIELDS arrive and park the vehicle in the driveway of 5003 North 55th Street moments after FIELDS departed the parking lot of 5123 West Villard Avenue. The case agent observed FIELDS enter 5003 North 55th Street through the west facing door. A short time later, the case agent observed FIELDS exit the residence, enter the green Dodge Caravan, and leave the area. At that time, surveillance ended.

68.     Case agents met the undercover officer at the offices of the North Central HIDTA and retrieved the small paper bag that BEAN gave to the undercover officer. Contained within the paper bag was a plastic bag with two chunks of an off white/tan substance, which case agents believed to be heroin. The substance was weighed and found to be approximately 125 grams. Special Agent Jeff Milam subjected a sample of the substance to the Nark II Meckes field test and

received a positive result for the presence of heroin. A later test by the DEA's North Central Laboratory showed that the substance contained a mixture of fentanyl, heroin, and quinine.

69. On November 16, 2020, the Honorable William Duffin authorized the installation of a GPS tracking device for a vehicle operated by FIELDS—a 2013 Dodge Caravan with Wisconsin license plate AGZ-9793. Case agents installed the GPS tracking device on November 17, 2020.

70. On November 22, 2020, case agents observed the 2013 Dodge Caravan travel from the area of 9096 North 95th Street in Milwaukee to 5741 South Michigan Avenue in Chicago. Case agents know this location is the residence of Charles McMILLAN. The 2013 Dodge Caravan was in the area of 5741 South Michigan Avenue at 10:21 a.m. Case agents reviewed the location information for FIELDS's cell phone and observed the phone traveled to the area around that same time. The electronic location information showed that FIELDS's cell phone was on I-90 southbound near Fuller Park, Illinois at 10:16 a.m. This area is approximately one mile from McMILLAN'S residence.

71. On December 1, 2020, case agents reviewed the location information for FIELDS's cell phone. At 7:12 a.m., case agents noted that FIELDS's cell phone was in the vicinity of 7010 North 55th Street, Apartment G. A case agent arrived at that location at approximately 7:30 a.m. and observed the green 2002 Dodge Caravan with Wisconsin license plate MX-4117 parked facing westbound on West Hustis Street. At approximately 9:44 a.m., the case agent observed FIELDS exit the door of 7010 North 55th Street, Apartment G and walk to the green Dodge Caravan. FIELDS entered the driver seat and started the vehicle and departed at approximately 9:44 a.m. Between 7:30 a.m. and 9:44 a.m., FIELDS's cell phone remained in the vicinity of 7010 North 55th Street, Apartment G, while the case agent was on surveillance.

## CANINE HANDLER AND CANINE TRAINING AND EXPERIENCE

72.     I know that Police Officer Christopher Conway of the Milwaukee Police Department's HIDTA Interdiction Unit is the current handler of the Drug Detection Canine "FLEXY," and that Police Officer Christopher Conway and "FLEXY" have received four weeks of intensive training and certification through Shallow Creek Kennels, deploying and utilizing a drug detection canine. I also know that this certification is based on guidelines set forth by the North American Police Work Dog Association (NAPWDA), which is a national group in partnership with local, state, federal, and international agencies including private vendors, law enforcement, and first responders. I know that this training establishes consensus-based best practices for the use of detection canine teams by improving the consistency and performance of deployed teams. Officer Conway has explained to me that Shallow Creek Kennels utilizes independent evaluators to certify each drug detection canine team, and that the evaluators that certified "FLEXY" have been certifying drug detection canines since 2004.

73.     Officer Conway informed me that the first evaluator and owner is John Brannon. John Brannon's career in law enforcement spans a 24 year-period with 22 years having been spent as a K-9 officer working five dual-purpose police service dogs. For approximately 20 years, Brannon was employed by the Coral Springs Police Department in Broward County, Florida, where he was responsible for the day-to-day operations of the K-9 unit. While with Coral Springs, Brannon was an active Special Response Team member and the S.R.T canine team leader. Brannon has been a certified Florida K-9 Instructor since 1993 and is a Florida Department of Law Enforcement Trainer Evaluator. In 2004, Brannon established Shallow Creek Kennels in Sharpsville, Pennsylvania. Shallow Creek Kennels is a certified training facility for the Ohio Peace Officer's Training Academy and Florida Department of Law Enforcement. Brannon's professional

membership includes serving as a Master Trainer for the North American Police Work Dog Association and past president of Pennsylvania Police Work Dog Association.

74.     Officer Conway also explained that a second evaluator is Jeremy Riley. Riley entered the United States Army, where he served for five years as a Military Working Dog Handler. During his military career, Riley worked two dual-purpose military working dogs, achieving the rank of Specialist and was deployed to Korea and Bosnia. He then became a police canine handler for the Henderson County Sheriff's Office in North Carolina, where he worked three dual-purpose police service dogs for 11 years. Riley was his agency's unit trainer. Riley is also a member of the North American Police Working Dog Association.

75.     Officer Conway explained a third evaluator is Mike Van Leer, who became a state certified canine instructor for the Florida Highway Patrol in 1993. Van Leer then became the first and only current state certified evaluator for the Florida Highway Patrol in 1996. He is the first canine trainer/evaluator in the State of Florida qualified to teach and certify narcotic detection canines under a national program, the International Forensic Research Institute at Florida International University. As a canine instructor/evaluator, Van Leer has trained over 65 police canine teams in the areas of narcotic detection, tracking, and patrol work. Van Leer has over 2,000 academic hours in the training of Police Working Dogs.

76.     Officer Conway is the current handler of the Drug Detection Canine "FLEXY." "FLEXY" is trained to detect the odor of controlled substances, including marijuana, cocaine, heroin, fentanyl, methamphetamine, and other dangerous drugs with chemical processing similarities. According to Officer Conway, "FLEXY" has detected controlled substances more than 300 times in the past including training. "FLEXY's alerts have been the basis for more than 10 search warrants and searches of motor vehicles. In each alert, drugs that "FLEXY" is trained to

24

find have been recovered or a drug nexus has been found.

77.    Based on the above information, there is probable cause to believe that the items described in Attachment B, which are evidence of violations of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, are located at the premises described in Attachments A. I therefore request that this court issue a warrant to search the above referenced locations and to seize the items specified in Attachment B.

78.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice for 30 days after execution. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). The investigation is currently ongoing and involves multiple targets. This warrant does not authorize the seizure of any tangible property or any wire or electronic communication.

## ATTACHMENT A1
### *Location to be Searched*

The exterior of Unit 526 of the CubeSmart Self Storage, located at 5115 West Good Hope Road, Milwaukee, Wisconsin, a secure self-storage facility with eight separate storage buildings. Unit 526 is in the fourth storage building facing north with the numerals "526" above the storage door and is secured by a pad lock.





The exterior of Unit 549 of the CubeSmart Self Storage, located at 5115 West Good Hope Road, Milwaukee, Wisconsin, a secure self-storage facility with eight separate storage buildings. Unit 549 is in the fourth storage building facing south with the numerals "549" above the storage door and secured by a pad lock.





## ATTACHMENT A3
### *Location to be Searched*

The exterior of 7010 North 55th Street, Apartment G, Milwaukee, Wisconsin, an apartment located within the Presidio Square Apartments complex, which is depicted below.



Case 2:20-mj-00469-SCD   Filed 12/08/20   Page 31 of 32   Document 1

**<u>ATTACHMENT B</u>**
*Items To Be Searched*

The odor vapor of the following controlled substances which can be detected by the drug detection canine, emanating from the target location(s).

1. The odor of marijuana.
2. The odor of cocaine.
3. The odor of heroin.
4. The odor of fentanyl.
5. The odor of methamphetamine.

This warrant does not authorize the seizure of any tangible property.